IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRADLEY MARKS, | |
| Plaintiff, | Case No. 2:21-cv-1243 |
| v. | |
| THERMO FISCHER SCIENTIFIC and NTT DATA SERVICES, INC., | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

NOW COMES Plaintiff, Bradley Marks, by and through his attorney, Prabhu Narahari, Esq., of Manes & Narahari LLC, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Pennsylvania Human Relations Act of 1955 ("PHRA") 43 Pa. Cons. Stat. § 951 *et seq.* Plaintiff alleges that he was retaliated against because he was unlawfully terminated from his position immediately after he reported harassing and discriminatory conduct on the part of his supervisor.

## II. Jurisdiction and Venue

2. This action arises under Title VII. This Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

4. A substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania. The venue is proper pursuant to 28 U.S.C. § 1391(b).

5. Plaintiff filed a timely charge with the Equal Employment Opportunity Employment Commission ("EEOC") regarding his allegations under Title VII on February 1, 2021, under charge number 533-2020-00721. *See Exhibit 1.*

6. Plaintiff was mailed Notice of Right to Sue from the ("EEOC") on July 21, 2021. This Complaint has been filed within ninety days of Plaintiff's receipt, making the action timely. *See Exhibit 2.*

## III. Parties

7. Plaintiff, Bradley Marks ("Plaintiff"), is an adult individual with a primary residence located at 7030 Mill Creek Boulevard, Youngstown, OH 44512.

8. Defendant, Thermo Fischer Scientific ("Defendant Thermo Fischer"), is a Massachusetts corporation with a regular place of business located at 300 Industry Drive, PA 15275.

9. Defendant, NTT Data Services, Inc. ("Defendant NTT"), is a Texas corporation with a regular place of business located at 3007950 Legacy Drive, Suite 900, Plano, TX 75024.

## IV. Facts

10. Plaintiff began working as an IT Engineer for Defendant NTT in August 2017. Through his employment, he was assigned by the company to work at the Pittsburgh, Pennsylvania location of Defendant Thermo Fisher.

11. Throughout the course of his employment, Plaintiff's job responsibilities included IT-related trouble shooting, customer service, imaging, receiving inventory and inventory control tickets, as well as various project assistance.

12. Plaintiff was well qualified for his position, and he excelled in his role with both Defendant NTT and Defendant Thermo Fisher.

13. Despite this, Plaintiff experienced significant hostility from his supervisor, Robert Korn, an employee of Defendant Thermo Fischer.

14. Plaintiff felt from the beginning of his employment that Mr. Korn disliked him and wanted him to leave the company. He was led to believe that he was disliked because Mr. Korn frequently made rude and inappropriate comments to him.

15. For example, on Plaintiff's first day, he was assigned to take phone calls without any prior training or experience. Because he was reasonably nervous, his speech was, at times, paused with statements of "um" and "uh" as he navigated his way through the new experience. Mr. Korn immediately disapproved and stated that he would "smack" Plaintiff if he did not stop using "um" and "uh."

16. Additionally, by way of example, in the midst of the Covid-19 pandemic, Plaintiff requested to work from home after the staff was called back to in-person work. Plaintiff made this request because he resided with his elderly parents and wished to limit their potential exposure to

the virus. Plaintiff's request was denied; however, another employee, Gary Cooper, was permitted to work from home after the staff was called back to in-person work in June 2020.

17. Mr. Korn also regularly made discriminatory comments to Plaintiff based on his religion.

18. For example, on one occasion, Mr. Korn told Plaintiff, who is Jewish, that he "should have been burned in an oven." Plaintiff, who is related to and associates with several survivors of the Holocaust, found the comment to be discriminatory and offensive.

19. At various additional points, Mr. Korn made other anti-Semitic comments. At one point, when the topic of Germany came up in the office, Mr. Korn raised his hand to his mouth to make a Hitler-style mustache. He then made a Nazi salute. This was done shortly after a deadly and nationally-reported shooting at Tree of Life Synagogue in the Squirrel Hill neighborhood of Pittsburgh, Pennsylvania.

20. In light of the comments regarding members of the Jewish faith, Plaintiff reported Mr. Korn's behavior to members of management at both Defendant Thermo Fisher and Defendant NTT. He also requested, on several occasions, to be reassigned to another project.

21. Plaintiff was never moved to a different company.

22. Additionally, shortly after reporting the vile comments made by Mr. Korn, Plaintiff was terminated. He was not provided cause for his termination.

23. Plaintiff's final date of employment with both Defendant NTT and Defendant Thermo Fisher was November 23, 2020.

24. In the hours after he was dismissed, several remaining employees overheard Mr. Korn state that he wished he could "punch" Plaintiff "in the face."

25. Prior to his termination, Plaintiff had received no disciplinary warnings, nor had his work performance ever been criticized by members of the management staff.

## COUNT I
### Discrimination in Violation of Title VII

26. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

27. In order to state a *prima facie* case for unlawful discrimination in violation of Title VII, a plaintiff must first show that he is "a member of a protected class" and that he was otherwise "was qualified for" his job. *Oliver v. Clinical Practices of U. of Pennsylvania*, 921 F. Supp 2d 424, 447 (E.D. Pa. 2013).

28. A plaintiff must also show that he "suffered an adverse employment action" which gives "rise to an inference of discrimination." *Id.*

29. Here, Plaintiff, as a member of the Jewish faith, is a part of a protected class under the category of religion.

30. Plaintiff was qualified for his position in that he was a successful member of the staff of both Defendant NTT and Defendant Thermo Fisher for several years, and he held an excellent employment record.

31. Plaintiff suffered adverse employment action when he was subjected to anti-Semitic comment and threats that were made to him by his supervisor. For example:

   a. Mr. Korn stated that he would "smack" Plaintiff if he did not stop using "um" and "uh" when conducting phone calls early on in his employment.

   b. Plaintiff was not permitted to extend his ability to work from home during the Covid-19 pandemic while another employee was afforded such an opportunity.

  c. Mr. Korn told Plaintiff that he "should have been burned in an oven" during the Holocaust.

  d. Mr. Korn made physical gestures which invoked Nazi-inspired imagery.

  e. Plaintiff was denied requests to work in a different setting, despite the discrimination which he faced.

32. The use of the discriminatory language, hurtful comments, and direct threats against his safety provide evidence of intentional discrimination made by Mr. Korn against Plaintiff.

33. The foregoing misconduct by Defendants was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal and state law to be free from discrimination.

## COUNT II
### Discrimination in Violation of the PHRA

34. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

35. The analytical framework used to evaluate a claim under the PHRA claim effectively indistinguishable from that used under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

36. Because Plaintiff is able to state a *prime facie* case for discrimination under Title VII, so too will he be able to state such a claim under the PHRA.

37. Here, Plaintiff, as a member of the Jewish faith, is a part of a protected class under the category of religion.

38. Plaintiff was qualified for his position in that he was a successful member of the staff of both Defendant NTT and Defendant Thermo Fisher for several years, and he held an excellent employment record.

39. Plaintiff suffered adverse employment action when he was subjected to anti-Semitic comment and threats that were made to him by his supervisor. For example:

   a. Mr. Korn stated that he would "smack" Plaintiff if he did not stop using "um" and "uh" when conducting phone calls early on in his employment.

   b. Plaintiff was not permitted to extend his ability to work from home during the Covid-19 pandemic while another employee was afforded such an opportunity.

   c. Mr. Korn told Plaintiff that he "should have been burned in an oven" during the Holocaust.

   d. Mr. Korn made physical gestures which invoked Nazi-inspired imagery.

   e. Plaintiff was denied requests to work in a different setting, despite the discrimination which he faced.

40. The use of the discriminatory language, hurtful comments, and direct threats against his safety provide evidence of intentional discrimination made by Mr. Korn against Plaintiff.

41. The foregoing misconduct by Defendants was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal and state law to be free from discrimination.

## COUNT III
### Retaliation in Violation of Title VII

42. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

43. In order to state a *prima facie* case for unlawful retaliation in violation of Title VII, a plaintiff must first show that he "engaged in a protected activity" under the law. *McIntosh v. White Horse Village, Inc.*, 249 F. Supp. 3d 796, 800 (E.D. Pa. 2017).

44. A plaintiff must also present evidence that he "suffered an adverse employment action, and that there was a causal connection between the participation in the protected activity and the adverse action." *Id.*

45. In order to do so, a plaintiff may provide that his engagement in the protected activity was a probable motive for the adverse action. *Id.* at 801.

46. Here, Plaintiff engaged in a protected activity when he reported the racist, anti-Semitic, and threatening comments made to him by his supervisor, Mr. Korn.

47. He suffered adverse employment action first when the companies refused to re-assign his position, and again when he was terminated without cause.

48. Evidence of the connection between Plaintiff's engagement in a protected activity and his subsequent termination relate to the proximity of the report, as well as his otherwise excellent employment record. Plaintiff was never reprimanded or instructed to perform in a more efficient manner by either company. It was not until shortly after reporting Mr. Korn's behavior that he was terminated by both Defendant NTT and Defendant Thermo Fisher.

49. The foregoing misconduct by Defendants was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal and state law to be free from discrimination.

## COUNT IV
### Retaliation in Violation of the PHRA

50. The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

51. The analytical framework used to evaluate a claim under the PHRA claim effectively indistinguishable from that used under Title VII. See *Jones v. Sch. Dist. of Philadelphia*, 198 F.3d 403, 409 (3d Cir. 1999).

52. Because Plaintiff is able to state a *prime facie* case for retaliation under Title VII, so too will he be able to state such a claim under the PHRA.

53. Here, Plaintiff engaged in a protected activity when he reported the racist, anti-Semitic, and threatening comments made to him by his supervisor, Mr. Korn.

54. He suffered adverse employment action first when the companies refused to re-assign his position, and again when he was terminated without cause.

55. Evidence of the connection between Plaintiff's engagement in a protected activity and his subsequent termination relate to the proximity of the report, as well as his otherwise excellent employment record. Plaintiff was never reprimanded or instructed to perform in a more efficient manner by either company. It was not until shortly after reporting Mr. Korn's behavior that he was terminated by both Defendant NTT and Defendant Thermo Fisher.

56. The foregoing misconduct by Defendants was undertaken with malice and/or reckless indifference to Plaintiff's rights protected under federal and state law to be free from discrimination.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor, and against Defendants, and award all damages available at law and equity, including:

a) Lost back pay resulting from Defendants' wrongful discharge of Plaintiff;

b) Lost front pay continuing into the future for Defendants' unlawful conduct;

c) Compensatory damages, including emotional damages and humiliation;

d) Punitive damages to punish Defendants' conduct and to deter similar future conduct;

e) Costs for bringing this action;

f) Attorneys' fees;

g) Pre-judgment and continuing interest; and

h) Any other relief that this Court deems necessary and proper.

Respectfully Submitted,

/s/ Prabhu Narahari
Prabhu Narahari, Esq.
PA ID: 323895
**Manes & Narahari LLC**
Law & Finance Building
429 Fourth Avenue, Suite 300
Pittsburgh, PA 15219
(412) 626-5588 Direct
(412) 650-4845 Fax
pn@manesnarahari.com

## VERIFICATION

I, Bradley Marks, swear under penalty of perjury under the laws of the United States of America that the facts alleged in the foregoing Complaint are true and correct to the best of my knowledge.

_____
Bradley Marks